## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE RESTRAINT OF ASSETS OWNED OR CONTROLLED BY JEAN-PIERRE NITKOWSKI TO INCLUDE<br><br>ACCOUNT -9855 AT WELLS FARGO BANK HELD BY TRADING & HIGHRATE INC. AND<br><br>ACCOUNT P GLOG2050 AT KCG AMERICAS LLC HELD BY EXELYUM LTD. | ) ) ) ) ) ) ) ) ) ) ) ) | Misc. No. _____ |

### UNITED STATES' APPLICATION TO REGISTER
### AND ENFORCE FOREIGN RESTRAINING ORDERS
### PURSUANT TO 28 U.S.C. § 2467(d)(3) AND 18 U.S.C. § 983(j)

Applicant United States of America, by and through its undersigned attorneys, respectfully submits this application for a restraining order pursuant to 28 U.S.C. § 2467(d)(3) and 18 U.S.C. § 983(j). The application seeks to enforce two restraining orders issued by the High Court in Lyon, France, in order to preserve the availability of U.S. assets that are subject to confiscation (forfeiture) in France. The assets will be restrained until France concludes its criminal proceedings and presents a final confiscation judgment to the United States Department of Justice, Office of International Affairs, for execution pursuant to the relevant bilateral treaty. The two restraining orders, issued December 20, 2013, stem from an investigation into a Ponzi scheme operated by Jean-Pierre Nitkowski from January 2011 to July 2013. French authorities have arrested and charged Nitkowski with a conspiracy to defraud and acting as an unlicensed bank or dealer. The orders have been certified for enforcement by the Assistant Attorney General of the U.S. Department of Justice's Criminal Division in accordance with 28 U.S.C.

1

§ 2467(d)(3) and (d)(3)(B)(ii).  The affected Wells Fargo Bank account is held in the name of Trading & Highrate Inc., a Delaware-based company solely owned by Nitkowski.  The KCG Americas LLC futures trading account is held in the name of Exelyum Ltd., the primary investment company utilized by Nitkowski to facilitate the Ponzi scheme.  KCG Americas LLC is the successor to "Knight Capital Americas LLC" named in the attached French order.

## I.      JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467(c)(1).  Venue is proper in this Court pursuant to § 2467(c)(2)(B), which provides that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

## II.     APPLICATION

The United States seeks issuance of a restraining order pursuant to § 2467(d)(3) to enforce two French restraining orders against assets owned by Jean-Pierre Nitkowski.  In its request pursuant to the applicable mutual legal assistance ("MLA") treaty, France asked the United States to enforce two orders issued on December 20, 2013, by the High Court in Lyon. The United States, with the appropriate certification of the Assistant Attorney General attached hereto as Exhibit A, applies to this Court to issue an order restraining the following assets held for the benefit of Nitkowski:

1.  Wells Fargo Bank Account 2000036609855, held in the name of Trading & Highrate Inc.; and

2.  KCG Americas LLC Futures Trading Account P GLOG2050, held in the name of Exelyum Ltd.

## III.   FACTUAL BACKGROUND

Between January 2011 and July 2013, Jean-Pierre Nitkowski ran a Ponzi scheme preying on French residents eager to invest in the lucrative, but opaque, foreign exchange market ("forex"). Nitkowski and his co-conspirators raised up to €40 million Euros from 493 unwitting victims through an investment company called Exelyum Ltd. Nitkowski was the mastermind: he conceived the fraud, established the companies used to execute it, opened bank accounts, investment accounts, and email accounts, and he located the majority of the investors, some of whom were introduced to Exelyum by dubious financial professionals assisting Nitkowski. Nitkowski guaranteed a 3% monthly return to investors, although he changed the percentage if a particular victim required more or less convincing to part with their capital, and he claimed to have a foolproof method to offset losses in the forex market. He recruited Marc-Antoine Adam de Villiers, a promising trader and grandson of a celebrity author, Gérard de Villiers, to promote Exelyum to potential investors around the French Riviera and to develop marketing material and contracts. Nitkowski was usually the only signatory on Exelyum's accounts around the world and he personally directed most of the financial transactions involved in the criminal scheme.

The French securities regulator, the AMF (Financial Markets Authority), was alerted to Nitkowski's scheme when clients of an investment advisory firm based in Lyon, France—Herios Finance—began questioning recommendations from Herios. Herios, managed by Stephane Benhamou, advised clients to invest in Exelyum and promised that money invested in the forex market through Exelyum, while unavailable for a year, was 100% secure and would yield a monthly interest payment of 3%. Herios was one of the main feeders into Nitkowski's Ponzi scheme and investors sent their money to an Exelyum account at Bank of America in Paris. The money was transferred by the accused to another Bank of America account in London, and much

3

of the money eventually made its way to the United States, either to KCG (Knight Capital

Group) Americas LLC; Wells Fargo Bank; Rosenthal Collins Group LLC; JPMorgan Chase

Bank; or Cor Clearing LLC. Investor money was also pooled in Monaco, Cyprus, and San

Marino. Suspicious of the unusually attractive and non-transparent nature of the offering, the

AMF made inquiries with their regulatory counterpart in the United Kingdom, the Financial

Services Authority, and the results of that inquiry led to the opening of a criminal investigation

conducted by French Police under the guidance of Magistrate Judge and Vice-President in

Charge of Investigation, Marc Emmanuel Gounot ("Judge Gounot"), of the High Court in Lyon.

The criminal investigation has revealed that Exelyum Ltd., based in the Seychelles with a

representative office in Paris, did not have the required registration to sell or offer financial

products and services in France. Additionally, the "returns" paid to Exelyum's investors were

not profits, but funds paid into the Ponzi scheme by late-coming investors. Investor money was

either used to pay other investors, was embezzled by Nitkowski and his co-conspirators for their

personal use, or was actually invested in forex trading accounts, but not, ostensibly, for the

benefit of investors. Nitkowski and his co-conspirators raised approximately €40 million Euros

and about €22.5 million has been returned to investors. French authorities are attempting to

locate and secure the missing portion, including the accounts at issue here, through the

confiscation of these accounts as criminal proceeds.

    Jean-Pierre Nitkowski has been arrested and charged with conspiracy to defraud and

acting as an unlicensed bank or dealer. *See* French Penal Code Arts. 313 (fraud) and 132

(defining an organized gang as "any group formed or association established with a view to the

preparation of one or more criminal offenses . . . marked by one or more material actions");

French Monetary and Financial Code, Art. L511 (prohibiting unregistered persons and entities

from taking deposits from the public and/or carrying out financial transactions on a regular basis on behalf of others). Nitkowski is in custody in France at the Lyon-Corbas prison and likely will remain there until he stands trial in early 2015. Judge Gounot has instituted a number of freezing measures to preserve assets for confiscation, if Nitkowski and his co-conspirators are convicted. France intends to return confiscated assets to victims.

On May 5, 2014, DOJ's Office of International Affairs received a MLA request from France seeking enforcement of five restraining orders issued by the High Court in Lyon. It was referred to the Asset Forfeiture and Money Laundering Section ("AFMLS") for execution, at which point AFMLS discovered that roughly $4,719,000 of Nitkowski's assets remain in the United States in two accounts: business checking account 2000036609855 held in the name of Trading & Highrate Inc. at Wells Fargo Bank with a balance of approximately $19,000, and futures trading account P GLOG2050 held in the name of Exelyum Ltd. at KCG Americas LLC with a balance of approximately $4.7 million. Trading & Highrate Inc. is a Delaware corporation solely owned by Nitkowski. It uses as its business address a storefront in Miami that sells pre-paid cards, money services, and cell phones. KCG Americas LLC is the successor to "Knight Capital Americas LLC" named in the attached French order. *See* Exhibit A, Certification and French Orders. Accordingly, only two of the five French restraining orders are now actionable, and prompt consideration of this application is sought because the accused, or someone acting on his behalf, has recently attempted to dissipate the KCG Americas account that is not only subject to a French restraint, but likely contains funds belonging to defrauded investors.

IV.    **LEGAL AUTHORITY**

Pursuant to 28 U.S.C. § 2467(d)(3), federal courts are authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an enforceable, final foreign forfeiture or confiscation judgment. *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28 U.S.C. § 2467(d)(3)).[1] Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for and the court may issue a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.

Section 2467(d)(3)(A) also requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A). Consequently, the district court may deny enforcement of a foreign restraining order if it finds that the order was obtained without due process, was issued by a foreign court that lacked subject matter jurisdiction, or was obtained by fraud. In addition, cross-references to § 983(j) do not require that forfeiture proceedings, civil or criminal, be filed in the United States, but rather, refer to applicable foreign criminal or forfeiture proceedings initiated abroad. *See* 28 U.S.C. § 2467(d)(3)(A)(ii)(II); *see also Luan v. United States*, 722 F.3d 388, 394-97 (D.C. Cir. 2013) (holding that the filing of a foreign civil forfeiture complaint is not required, but that "applicable" foreign criminal proceedings, sufficient to justify the restraint of assets indefinitely pending final forfeiture, should entail "procedural due process protections consistent with those

---

[1] On December 22, 2010, Congress amended 28 U.S.C. § 2467(d)(3) partly in response to case law limiting courts' authority under the prior iteration of the statute to freeze assets only after a foreign court had entered a final forfeiture judgment. *See In re Any and All Funds or Other Assets in Brown Bros. Harriman & Co. Account #8870792 in the Name of Tiger Eye Inv. Ltd.*, 613 F.3d 1122 (D.C. Cir. 2010). As amended, the statute now clearly authorizes courts to issue a restraining order "at any time before or after the initiation of forfeiture proceedings by a foreign nation." 28 U.S.C. § 2467(d)(3)(A)(i) (2012).

that the filing of an American civil forfeiture complaint" would have afforded).  In line with
analogous procedures in a domestic civil or criminal forfeiture proceeding under 18 U.S.C.
§ 983(j), U.S. courts may issue an order fashioning the appropriate relief to preserve property
during the pendency of foreign criminal or forfeiture proceedings.

A prerequisite for the enforcement of a foreign restraining order is certification by the
Attorney General that enforcement of the order is in the "interest of justice." 28 U.S.C.
§ 2467(b)(2).  On May 9, 2006, the Attorney General delegated authority for the certification of
orders under this provision to the Assistant Attorney General for the Criminal Division. *See*
Exhibit B, DOJ Order No. 2820-2006.  The Assistant Attorney General's determination is a
statutory requirement for the enforcement of court-issued, foreign restraining orders and the
decision is not subject to judicial review. *See* 28 U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).

## V.    DISCUSSION

### A.    The French Restraining Orders Meet the Criteria for Enforcement Under § 2467(d)(3)(A).

Section 2467 sets forth the following criteria that are relevant in considering a request for
enforcement of a foreign restraining order: (1) whether the United States and the foreign nation
seeking enforcement of the order are parties to a formal, international agreement providing for
mutual forfeiture assistance, § 2467(a)(1); (2) whether the Attorney General has determined it
would be in the interest of justice to certify the order for enforcement, § 2467(b)(2); (3) whether
the foreign order was issued consistent with due process, § 2467(d)(3)(A)(ii)(I); (4) whether the
foreign court had subject matter jurisdiction to issue the restraint, *id.*; and (5) whether there is
any reason to believe the foreign order was obtained by fraud, *id.*[2] The certified French

---

[2] *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in

restraining orders meet the above criteria for registration and enforcement pursuant to § 2467 and, therefore, entry of the proposed U.S. restraining order is both necessary and appropriate to preserve the property for eventual confiscation in France.

1.   Agreement on Forfeiture Assistance

First, the United States and France are parties to a MLA Treaty that was signed in 1998 and entered into force in 2001.[3]  Under article 11 of that Treaty, the United States is obligated to assist France in forfeiture matters, including by taking protective measures to immobilize suspected criminal proceeds and instrumentalities, such that the first criterion is satisfied.

2.   Attorney General Certification

Second, the French restraining orders were certified by the Assistant Attorney General on July 2, 2014.  The Assistant Attorney General, in certifying the orders, acknowledges that she has considered the facts of the case, the foreign law, the applicable U.S. law, and the circumstances of the judiciary from where the orders came, and has concluded that enforcement of the foreign restraining orders pursuant to 28 U.S.C. § 2467 is "in the interest of justice." *See* Exhibit A, AAG Certification and French Orders.  Thus, the second criterion is met.

3.   Due Process

Third, the December 20, 2013, restraining orders from France were issued consistent with due process.  The Nitkowski case is in the pre-trial investigation phase: the preliminary investigation has concluded and the accused has been charged.  During this time, the magistrate

---

fact compatible with due process").  An affected party may appear in this proceeding to challenge any U.S. restraining order issued as a result of this application by making an affirmative showing that the foreign order or process was defective.

[3] *See* Treaty with France on Mutual Legal Assistance in Criminal Matters, U.S.-Fr., Dec. 10, 1998, T.I.A.S. 13010 (2001); *see also* Instrument as Contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union Signed 25 June 2003, as to the Application of the Treaty with France on Mutual Legal Assistance in Criminal Matters Signed 10 December 1998, U.S.-Fr., Sept. 30, 2004, S. Treaty Doc. No. 109-13 (2006) (reaffirming and amending the 1998 bilateral MLAT between the U.S. and France).

in charge of the investigation has certain authorities under the French Penal Procedure Code. Pursuant to Article 706-153, the magistrate may "rule by reasoned order the attachment of such intangible property or rights which may be confiscated." Such orders are issued on a case-by-case basis, and here, Judge Gounot decided that the U.S. assets named in the attached orders should be restrained because the assets are both the proceeds and the object of the conspiracy to defraud. Article 706-153 also states that the Public Prosecutor, the owner of the restrained assets, and any known third parties having an interest in the restrained assets should be notified. Per the terms of the attached restraining orders, Judge Gounot's Chamber notified Nitkowski of the existence of the orders on January 2, 2014. Within ten days of receiving notice, Nitkowski, as the owner of the assets, could have filed an appeal challenging the issuance of the restraining orders or seeking their modification. *See* French Penal Procedure Code, Art. 706-153 (the appellant may also request access to the evidence supporting a restraining order). Article 706-153 provides for notice and an opportunity to be heard, in person, by the Investigative Chamber, and to examine items relating to any restraint. In addition to the Article 706-153 challenge, which must be lodged within ten days, Nitkowski may, at any time, petition for a reversal of the orders and the return of any restrained assets. If he were to file such a petition, and Judge Gounot denied his request, the decision would be subject to immediate interlocutory review by a three-judge panel.

    As of the filing of this application, Nitkowski has not availed himself of the specific provisions that would enable him to challenge the December 2013 restraining orders pertaining to his U.S. assets. A magistrate issued the orders in accordance with French criminal procedure on the basis of evidence and belief in order to preserve assets for confiscation and Nitkowski has been given notice and an opportunity to be heard. The restraining orders were issued in a

manner consistent with due process, thus satisfying the third criterion.

    4.    <u>Subject Matter Jurisdiction</u>

Fourth, the High Court in Lyon is the proper authority to issue the restraining orders in this matter because the French Penal Procedure Code authorizes the magistrate in charge of the investigation to enter such orders and the High Court in Lyon is the local court with jurisdiction over the investigation and prosecution.  In France, charges may be brought in any court having jurisdiction over one or more of the material actions of the conspiracy and Lyon is the domicile of one of the co-conspirators who lured investors to Exelyum, namely, Stephane Benhamou of Herios Finance.

    5.    <u>Absence of Fraud</u>

Fifth, the United States has no reason to believe that the December 20, 2013, restraining orders were obtained by fraud on the part of French authorities.  Accordingly, the five criteria pertinent in considering an application to enforce and register a foreign restraining order are satisfied.

**B.**    **Dual Forfeitability, While Not Required to Enforce Foreign Restraining Orders, Is Satisfied.**

In an application to enforce foreign restraining orders (as opposed to a final judgment), the United States is not required to show that the criminal conduct supporting the foreign restraining orders would also give rise to forfeiture if it had been committed in the United States. *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 41 (D.D.C. 2012) ("[Section 2467(d)(3)] does not expressly incorporate the dual forfeiture requirement that applies to final orders of forfeiture.").  Nevertheless, dual forfeitability may become relevant if and when France asks the United States to enforce a confiscation judgment. *See* 28 U.S.C. § 2467(a)(2)(A)-(B).  Here,

dual forfeitability would be satisfied because Nitkowski's conduct likely would have violated U.S. criminal laws giving rise to forfeiture had such offenses been committed in this country.

Specifically, Nitkowski would have violated 18 U.S.C. § 1343 (wire fraud); § 2314 (interstate or foreign transport of stolen property); and § 1956 (money laundering). *See* 18 U.S.C. § 1956(c)(7)(a) (defining specified unlawful activities ("SUAs") for the purpose of the money laundering statutes); § 1961(1)(B) (wire fraud and interstate transport of stolen property are SUAs). Any property involved in, or traceable to, a money laundering transaction is forfeitable. *See* § 982(a)(1) (criminal forfeiture); § 981(a)(1)(A) (civil forfeiture). Furthermore, the wire fraud committed by Nitkowski in electronically distributing false and misleading sales documents and in wiring investors' funds to accounts under his personal control gives rise to forfeiture, independently of any money laundering violation. *See* § 981(a)(1)(C). Nitkowski set-up and used the companies, email accounts, bank accounts, and investment accounts to carry out the Ponzi scheme, and he moved investor money from Paris to London and elsewhere around the world, only to keep much of it himself and pay new investors with the contributions of previous investors. His scheme would also meet the jurisdictional elements of analogous U.S. statutes, as it affected interstate and foreign commerce and exceeds the $5,000 threshold in 18 U.S.C. § 2314. Additionally, the charge against Nitkowski under the French Monetary and Financial Code relating to his failure to register as a bank or dealer may be analogous to the U.S. requirement to register as a broker or dealer under the 1933 Securities Act.[4] By wiring investors' money to accounts in foreign financial havens and by opening at least one account in the name of

---

[4] If his conduct occurred here, Nitkowski might have violated U.S. securities or commodities law, depending on the nature of the forex investments he marketed. *See, e.g.*, 15 U.S.C. § 78ff (criminal liability based on violations of 15 U.S.C. § 78o (inducing the purchase of any security without registering as a broker or dealer) and § 78j (securities fraud)); 18 U.S.C. § 1961(1)(D) (fraud in the sale of securities is an SUA). Furthermore, Exelyum's sole registration in the Seychelles and Nitkowski's lack of licensing in France likely would carry additional criminal or civil consequences if Nitkowski had peddled his investments in the United States.

a Delaware shell company, Nitkowski was able to launder his criminal proceeds, effectively concealing their location and his ownership and promoting the continuance of the Ponzi scheme by making payments to new investors.

    **C.**    **This Court Should Act to Enforce the French Restraining Orders by Issuing a Restraining Order in a Manner Consistent with 18 U.S.C. § 983(j)(1).**

Pursuant to 28 U.S.C. § 2467(c)(2)(B) and § 2467(d)(3)(A), the District Court for the District of Columbia is authorized to enter a restraining order to preserve the availability of property subject to civil or criminal forfeiture under foreign law.  The December 20, 2013, restraining orders reflect the intention of French authorities to seek the confiscation of assets if, and when, Nitkowski is convicted on the criminal charges filed against him.  Thus, the United States seeks to guarantee the effectiveness of any future confiscation order or judgment against Nitkowski's U.S. assets.

Consequently, applying the language of § 2467(d)(3)(A) and structure under 18 U.S.C. § 983(j)(1)(A), this Court possesses the authority to issue an order—consistent with the French restraining orders—to "preserve the availability of property . . . subject to forfeiture" for the duration of the French criminal and confiscation proceedings.  *See* 28 U.S.C. § 2467(d)(3)(A) (specifying that the district court may enter a restraining order at any time before or after the initiation of foreign forfeiture proceedings).  As such, this Court should recognize the High Court of Lyon's orders and enforce them according to their terms by freezing the specified assets and prohibiting Nitkowski and all others from disposing of these U.S. assets or the rights thereto. *See* Exhibit A, AAG Certification and French Orders.  As to the accounts at the financial institutions referenced herein (Section II), the United States will serve any order issued by this Court upon the relevant institutions and freeze the funds contained in the named accounts

pending the conclusion of criminal and confiscation proceedings in France.

## VI.    CONCLUSION

The United States respectfully requests that this Court enforce the attached French restraining orders, consistent with U.S. obligations under the relevant treaty, by entering the attached proposed order pursuant to this Court's authority under 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii), and 18 U.S.C. § 983(j)(1)(A). The United States anticipates assistance from France in providing notice and a copy of any order issued by this Court to Jean-Pierre Nitkowski once the assets are secured.

Respectfully submitted,

JAIKUMAR RAMASWAMY, CHIEF
ASSET FORFEITURE AND MONEY
LAUNDERING SECTION

By:

A.J. DE KLUIVER (LA Bar #20163)
Assistant Deputy Chief
MARYBETH GRUNSTRA (NY Bar #4886362)
Trial Attorney

U.S. Department of Justice
Criminal Division
Asset Forfeiture and Money Laundering Section
1400 New York Avenue NW, 10100
Washington, DC  20530
Telephone:    (202) 514-1263
Fax:             (202) 616-2547

Attorneys for Applicant
UNITED STATES OF AMERICA

Exhibit A

Certification and French Orders



**U.S. Department of Justice**

Criminal Division

---

*Washington, D.C.  20530*

## ASSISTANT ATTORNEY GENERAL DECISION

**DECISION:**

In accordance with 28 U.S.C. § 2467(b)(2), (d)(3)(B)(ii), and the Attorney General's delegation of authority to the Assistant Attorney General for the Criminal Division, Number 2820-2006, I hereby find that it is in the interest of justice to CERTIFY the attached restraining orders—issued by the High Court in Lyon, France, in the matter of Jean-Pierre Nitkowski, Prosecution No. 13108000267, on December 20, 2013—for enforcement against two U.S. accounts owned or controlled by Jean-Pierre Nitkowski.

*[signature]*                                          7/2/14
Leslie R. Caldwell                                     Date
Assistant Attorney General
Criminal Division

Cour d'Appel de Lyon
Tribunal de Grande Instance de Lyon
Cabinet de
Marc Emmanuel GOUNOT
vice-président chargé de l'instruction
N° Parquet :        13108000267
N° de dossier :     JICABJI1113000028



# Ordonnance de saisie
## (avoirs en compte bancaire)

Nous, Marc Emmanuel GOUNOT vice-président chargé de l'instruction au Tribunal de Grande Instance de Lyon,

Vu l'information suivie du chef d'ESCROQUERIE REALISEE EN BANDE ORGANISEE faits commis courant janvier 2011 et jusqu'au 31 juillet 2013 à DARDILLY et en tout cas sur l'étendue du territoire national
prévus et réprimés par ART.313-2 AL.6, ART.313-1 AL.1, 313-7, ART.132-71, ART. 131-21 C.PENAL.

Vu les articles, 706-153, 706-154, 706-156 du code de procédure pénale;

Jean-Pierre NITKOWSKI, né le 2 février 1948 à Dreux, au nom d'une certaine société EXELYUM Ldt sans existence légale en France, est parvenu à récolter auprès du public, sur le territoire français, grâce à la complicité d'apporteurs d'affaires, une somme totale estimée à 40 millions d'euros entre 2011 et 2013. Les clients ont souscrit des contrats de placement financier présentant l'offre anormalement attractive d'un capital garanti et d'un rendement de l'ordre 3% par mois. La majeure partie des fonds a été effectivement virée sur des sociétés de garanties anglaises ou américaines et investie sur un marché boursier spéculatif via par les soins du trader Marc-Antoine ADAM DE VILLIERS, né le 24 août 1983 à Neuilly-sur-Seine. Des remboursements ou des rémunérations ont été versées à des investisseurs par les escrocs, mais ils ont été financés par les apports d'autres investisseurs. Une partie des fonds récoltés a été dissipée sur des comptes bancaires ouverts dans le monde entier par Jean-Pierre NITKOWSKI en vue de servir de rémunération aux escrocs. L'un de ces comptes a été ouvert aux Etats-Unis à la Banque Wells Fargo, sous couvert d'une société Trading & Highrate incorporée au Delaware, selon les références suivantes:

- 2/ TRADING AND HIGHRATE, 2895 BISCAYNE BLD STE 339, MIAMI FL33137 (USA),
- Etablissement bancaire :
  WELLS FARGO BANK, 360 Madison Avenue, NEW YORK (USA),
  Tél : +1-212-885-6200,
- compte n° 2000036609855, Swift n° PNBPUS33, ABA n° 031201467,

Il convient d'empêcher la dissipation des avoirs déposés sur ce compte, susceptibles de constituer un élément de preuve, de confiscation ou de restitution.

**PAR CES MOTIFS**

**Ordonnons la saisie des avoirs bancaires placés sur le compte susmentionné ouvert à la banque Wells Fargo, dans la limite d'un million d'euros.**

**Disons que la banque Wells Fargo ne pourra plus débiter le compte détenu par « Trading and Highrate » jusqu'à l'intervention d'un jugement définitif au fond.**

Fait en notre cabinet, le 28 décembre 2013
le vice-président chargé de l'instruction
Marc Emmanuel GOUNOT

Notification à Jean-Pierre NITKOWSKI
par fax avec AR le 02/01/14
le Greffier

**THE APPELLATE COURT IN LYON - FRANCE**
(COUR D'APPEL DE LYON, FRANCE)
**THE HIGH COURT IN LYON**
(TRIBUNAL DE GRANDE INSTANCE)

Office of Marc Emmanuel GOUNOT
VICE-PRESIDENT IN CHARGE OF INVESTIGATION
Prosecution no 13108000267
Investigation no JICABJI1113000028

### ATTACHMENT ORDER (C)
### (Assets Deposited in Bank Account)

I, Marc Emmanuel GOUNOT, Vice-President in charge of Investigation at the LYON High Court in France,

Considering the judicial inquiry initiated for ORGANIZED GANG DEFRAUD committed from January 2011 through 31 July, 2013 in DARDILLY, France, and in any case on the French territory, a punishable offense pursuant to ART. 313-2 Par.6, Art. 313-1 Par. 1, Art. 313-7, Art. 132-71 and 131-21 of the French Penal Code,

Pursuant to Art. 706-153, 706-155 and 706-156 of the French Penal procedure Code,

against Jean-Pierre NITKOWSKI, born Feb 2, 1948 in Dreux (France), acting on behalf of a company with no official registration in France, EXELYUM Ltd, has managed to raise a total of an estimated 40 million Euros between 2011 and 2013 from individuals on the French territory, thanks to the complicity of business contributors. The clients entered into written financial investment agreements offering capital protection and a yield of about 3% per month.
The main share of funds was actually transferred to British or American bonding companies and invested in a speculative stock market, through the services of a trader, Mr. Adam-de-Villiers, born Aug. 24, 1983 in Neuilly-sur-Seine (France). Investors were credited with some repayment or returns by the crooks, but such remuneration was financed through the contribution of new investors.
Part of the funds is still deposited worldwide in various bank accounts, opened by Jean-Pierre NITKOWSKI to remunerate the fraudsters. One of such accounts was opened in the USA with the Wells Fargo Bank, under the guise of Trading&Highrate, a company incorporated in Delaware, with the following references:

- 2/ TRADING AND HIGHRATE, 2895 BISCAYNE BLVD STE 339, MIAMI, FL33137 (USA)
- Bank : **WELLS FARGO BANK,** 360 Madison Avenue, NEW YORK (USA), Phone: +1-212-885-6200,
- **Account no 2000036609855, Swift no PNBPUS33, ABA no 031201467.**

Any dissipation of such assets, likely to be used as evidence and confiscated and returned, must be prevented.

**UPON THOSE GROUNDS**

**We hereby order that be attached such monies deposited on that account with the Wells Fargo Bank, to a limit of 1 million Euros.**



140110

**We also order consequently that the Wells Fargo Bank shall not debit the account held by "Trading and Highrate" company until the court has finally ruled on the merits.**

This attachment order established in my office on this 20th day of December, 2013.

*(Stamp of VP's office)*
The Vice-President in Charge of Investigation
Marc-Emmanuel GOUNOT
*(signature)*

Notification to Jean-Pierre NITKOWSKI

—.—.—.—.—.—.—.—.—.—.—.—.—.—.—.—.—.—.—.



| Traduction en anglais certifiée conforme à l'original en français, tel que présenté, par le traducteur assermenté soussigné, Expert près la Cour d'Appel de Lyon. | This translation into English is certified to be true to the original in French, as produced, by the translator undersigned, Expert by appointment to the Lyon Court of Appeal. |
|---|---|

NE   VARIETUR

Fait à Villars, le
Witness my hand this     **1 8 JAN. 2014**

1 4 0 1 1 0

Cour d'Appel de Lyon
**Tribunal de Grande Instance de Lyon**
Cabinet de
Marc Emmanuel GOUNOT
vice-président chargé de l'instruction
N° Parquet :            13108000267
N° de dossier :      JICABJI1113000028

## Ordonnance de saisie

# (créance de somme d'argent)

Nous, Marc Emmanuel GOUNOT vice-président chargé de l'instruction au Tribunal de Grande Instance de Lyon,

Vu l'information suivie du chef d'ESCROQUERIE REALISEE EN BANDE ORGANISEE faits commis courant janvier 2011 et jusqu'au 31 juillet 2013, prévus et réprimés par ART.313-2 AL.6, ART.313-1 AL.1, 313-7, ART.132-71, ART; 131-21 C.PENAL.

Vu les articles 706-153, 706-155 et 706-156 du code de procédure pénale;

Jean-Pierre NITKOWSKI, né le 2 février 1948 à Dreux, au nom d'une certaine société EXELYUM Ldt sans existence légale en France, est parvenu à récolter auprès du public, sur le territoire français, grâce à la complicité d'apporteurs d'affaires, une somme totale estimée à 40 millions d'euros entre 2011 et 2013. Les clients ont souscrit des contrats de placement financier présentant l'offre anormalement attractive d'un capital garanti et d'un rendement de l'ordre 3% par mois. La majeure partie des fonds a été effectivement virée sur des sociétés de garanties anglaises ou américaines et investie sur un marché boursier spéculatif via par les soins du trader Marc-Antoine ADAM DE VILLIERS, né le 24 août 1983 à Neuilly-sur-Seine. Des remboursements ou des rémunérations ont été versées à des investisseurs par les escrocs, mais ils ont été financés par les apports d'autres investisseurs. Une partie des fonds récoltés se trouve sur des comptes bancaires ouverts dans le monde entier par Jean-Pierre NITKOWSKI en vue de servir de rémunération aux escrocs. Une autre partie, qui peut être estimée à plusieurs millions de dollars ou d'euros, reste encore conservée dans les comptes de la société Penson GHCO 30.7 Customer Secured, 600 W. Chicago Avenue Suite 775 Chicago Il 60654-2822 ou plus probablement dans les comptes d'une autre société lui ayant succédé:

- **2/** KNIGHT CAPITAL AMERICAS LLC, 600 West Chicago Avenue, Suite 775, 60654-2822 CHICAGO (ILL.- USA),
- (client EXELYUM Ltd – SEYCHELLES)
- Compte interne : principal GLOG 2050, et sous-comptes GLOG2097, 2098, 2099, 2100, 2101, 2493, 2494, 2495, 2496.

et dans les comptes du broker Global Futures Exchange and Trading Co. Inc, 19300 Ventura Blvd. Tarzana, CA 91356, et déposée sur un compte bancaire ouvert à la Harris Trust and Savings Bank, 111 West Monroe Street, Chicago, IL 60603, avec les références ABA #071-000-288, 2730893 ou bien avec les références anciennes 30089-273-0877, 100959119900, swift HATRUS44GTM.
Il convient d'empêcher la dissipation de ces avoirs, susceptibles de constituer un élément de preuve et un élément de confiscation ou de restitution.

## PAR CES MOTIFS

**Ordonnons la saisie des sommes dues par Penson GHCO 30.7 Customer Secured, KNIGHT CAPITAL AMERICAS L.L.C. Et Global Futures Exchange and Trading Co. Inc, à la société »Exelyum » ou ses représentants dans la limite de 10 millions d'euros.**

**Disons que sont suspendus en conséquence les contrats souscrits relativement à ces avoirs et les demandes de paiement de ces avoirs jusqu'à l'intervention d'un jugement définitif au fond.**

Fait en notre cabinet, le 20 décembre 2013
le vice-président chargé de l'instruction
Marc Emmanuel GOUNOT

Notification à Jean-Pierre NITKOWSKI
par fax avec AR le 06/01/14      le Grefier

A

**THE APPELLATE COURT IN LYON - FRANCE**
(COUR D'APPEL DE LYON, FRANCE)
**THE HIGH COURT IN LYON**
(TRIBUNAL DE GRANDE INSTANCE)

Office of Marc Emmanuel GOUNOT
VICE-PRESIDENT IN CHARGE OF INVESTIGATION
Prosecution no 13108000267
Investigation no JICABJI1113000028

## ATTACHMENT ORDER (A)
### (Money Debt)

I, Marc Emmanuel GOUNOT, Vice-President in charge of Investigation at the LYON High Court in France,

Considering the judicial inquiry initiated for ORGANIZED GANG DEFRAUD committed from January 2011 through 31 July, 2013, a punishable offense pursuant to ART. 313-2 Par.6, Art. 313-1 Par. 1, Art. 313-7, Art. 132-71 and 131-21 of the French Penal Code,

Pursuant to Art. 706-153, 706-155 and 706-156 of the French Penal procedure Code,

against Jean-Pierre NITKOWSKI, born Feb 2, 1948 in Dreux (France), acting on behalf of a company with no official registration in France, EXELYUM Ltd, has managed to raise a total of an estimated 40 million Euros between 2011 and 2013 from individuals on the French territory, thanks to the complicity of business contributors. The clients entered into written financial investment agreements offering capital protection and a yield of about 3% per month.
The main share of funds was actually transferred to British or American bonding companies and invested in a speculative stock market, through the services of a trader, Mr. Adam-de-Villiers, born Aug. 24, 1983 in Neuilly-sur-Seine (France). Investors were credited with some repayment or returns by the crooks, but such remuneration was financed through the contribution of new investors.
Part of the funds is still deposited worldwide in various bank accounts, opened by Jean-Pierre NITKOWSKI to remunerate the fraudsters. Another part of the funds, which can be estimated at several millions of Dollars or Euros, is still held in the accounts of the company:

PENSON GHCO 30.7 Customer Secured, 600 W. Chicago Avenue, Suite 775, Chicago, Il 60654-2822, or more probably the company which succeeded them:
- KNIGHT CAPITAL AMERICAS LLC, 600 West Chicago Avenue, Suite 775, Chicago, Illinois 60654-2822
- (client EXELYUM Ltd – SEYCHELLES)
- internal account: principal GLOG 2050 and sub-accounts GLOG2097, 2098, 2099, 2100, 2101, 2493, 2494, 2495, 2496,

as well as the accounts of the broker: Global Futures Exchanges and Trading Co. Inc., 19300 Ventura Blvd., Tarzana, CA 91356, and deposited in a bank account opened with the Harris Trust and Savings Bank, 111 West Monroe Street, Chicago, IL 60603 under the references ABA #071-000-288, 2730893 or the former references 30089-273-0877, 100959119900, swift HATRUS44GTM.

Any dissipation of such assets, likely to be used as evidence and confiscated and returned, must be prevented.

**UPON THOSE GROUNDS**

We hereby order that be attached such monies due by Penson GHCO 30.7 Customer Secured, KNIGHT CAPITAL AMERICAS L.L.C. and Global Futures Exchange and Trading Co. Inc to the "Exelyum" company or their representatives to a limit of 10 million Euros.

We also order consequently that be suspended such agreements in relation with such assets and the requests of payment of such assets until the court has finally ruled on the merits.

This attachment order established in my office on this 20th day of December, 2013.

The Vice-President in Charge of Investigation
Marc-Emmanuel GOUNOT
(signature)


Notification to Jean-Pierre NITKOWSKI

--------------------------------



Traduction en anglais certifiée. This translation into English is certified conforme à l'original en français, to be true to the original in French, as tel que présenté, par le traducteur produced, by the translator assermenté soussigné, Expert près undersigned, Expert by appointment to la Cour d'Appel de Lyon. the Lyon Court of Appeal.

N E   V A R I E T U R

Fait à Villars, le
Witness my hand this          1 8 JAN. 2014

140108

Exhibit B

DOJ Order No. 2820-2006



# Office of the Attorney General
### Washington, D.C.

ORDER NO. 2820-2006

## DELEGATION TO THE ASSISTANT ATTORNEY GENERAL
## FOR THE CRIMINAL DIVISION CERTAIN AUTHORITY
## RELATED TO FOREIGN FORFEITURE JUDGMENTS

Pursuant to the authority vested in the Attorney General by law, including 28 U.S.C. §§ 509, 510, and 2467, and the civil and criminal forfeiture statutes enforced or administered by the Department of Justice, I hereby delegate to the Assistant Attorney General for the Criminal Division, as my designee, my certification authority under 28 U.S.C. § 2467 with respect to the recognition of foreign forfeiture and confiscation judgments and related orders.

The Assistant Attorney General is authorized to redelegate to any subordinates the authority, functions, or duties vested in the Assistant Attorney General under this order.

5-9-06
Date

Alberto R. Gonzales
Attorney General

INTERNAL ORDER -- NOT PUBLISHED IN F.R.